UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

     vs.              Cause No. 1:19CR00087 SNLJ

ROBBIE DONYEL HUDSON,

     Defendant.
===============================================================
CHANGE OF PLEA HEARING

BEFORE THE HONORABLE STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE

OCTOBER 15, 2019
===============================================================

APPEARANCES

For Plaintiff:

Mr. Timothy J. Willis
Assistant United States Attorney
Rush Hudson Limbaugh, Sr. Courthouse
555 Independence, 3rd Floor
Cape Girardeau MO 63703

For Defendant:

Ms. Jennifer L. Booth
Assistant Federal Public Defender
325 Broadway, 2nd Floor
P.O. Box 2043
Cape Girardeau MO 63702-2043

Reported by:

Alison M. Garagnani, CCR #475, CSR, RMR, CRR
Official Court Reporter
United States District Court
555 Independence, Room 3100
Cape Girardeau, MO 63703
(573) 331-8832

1              (THE PROCEEDINGS BEGAN AT 2:23 P.M.)

2    (THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT AND WITH

3    THE DEFENDANT PRESENT:)

4              THE COURT:  The next case is the United States of

5    America versus Robbie D. Hudson.  The Case Number is

6    19-CR-087.

7              The Government is present by Assistant United

8    States Attorney Tim Willis.

9              The Defendant is present by counsel Jennifer Booth.

10             And are you Robbie D. Hudson?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Is there an announcement then?

13             MS. BOOTH:  Yes, Your Honor, Mr. Hudson plans to

14   plead guilty to the indictment today.

15             This is an open plea.   I believe some facts were

16   previously submitted to Chambers that both parties had agreed

17   on.   That is no longer the case.

18             But Mr. Hudson is prepared to make a factual basis

19   today that we believe will meet the elements of the offense

20   that he is pleading to.

21             THE COURT:  Without any kind of plea agreement?

22             MS. BOOTH:  Yes, sir.   No plea agreement.

23             THE COURT:  Do you wish to plead guilty then?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  In that case I'll ask you a number of

1    questions about your willingness and desire to enter your

2    plea.   So if at any time you don't understand my questions,

3    just let me know that, and I'll explain the questions

4    further:  Okay?

5                THE DEFENDANT:  Yes, sir.

6                THE COURT:  First be sworn in by the Court Clerk.

7                      ROBBIE DONYEL HUDSON,

8    being produced and sworn, testified as follows:

9                THE COURT:  Now that you've been sworn on your oath

10   do you understand that your answers to my questions are

11   subject to the penalties of perjury if you do not answer

12   truthfully?  Do you understand that?

13               THE DEFENDANT:  Yes, sir.

14               THE COURT:  How old are you?

15               THE DEFENDANT:  39.

16               THE COURT:  How much education do you have?

17               THE DEFENDANT:  To ninth grade.

18               THE COURT:  Can you read and write?

19               THE DEFENDANT:  Yes, sir.

20               THE COURT:  Are you in good health today?

21               THE DEFENDANT:  Yes, sir.

22               THE COURT:  Have you had any drugs, medication or

23   alcohol in the last 24 hours?

24               THE DEFENDANT:  No, sir.

25               THE COURT:  Do you have any kinds of illnesses,

1    injuries, infirmities of any kind that require a physician, a

2    psychiatrist or any other kind of doctor?

3              THE DEFENDANT:  Just for my shoulder.

4              THE COURT:  Tell me about that.

5              THE DEFENDANT:  It's like I got a brace in my hand

6    when I use it.

7              THE COURT:  You need to speak up a little bit.

8              THE DEFENDANT:  My right hand and my right

9    shoulder.

10             MS. BOOTH:  Your Honor, Mr. Hudson, while in the

11   jail, injured his right hand and right shoulder, so he's

12   advising the Court that's the only infirmity he has today,

13   but I don't believe it affects his ability to go forward

14   today.

15             THE COURT:  Okay.  Are you taking any medications

16   for that or treatment or what?

17             THE DEFENDANT:  I have already had treatment for

18   it.

19             THE COURT:  And what was that?  You saw a doctor, I

20   guess?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Okay.  The reason I'm asking these

23   questions is I have to make sure there's nothing about your

24   mental or physical condition that is in any way affecting

25   your decision to enter this plea of guilty.  Do you

1    understand?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  So you can assure me that's the case.

4    There's nothing about this problem that's affecting your

5    decision; is that right?

6          THE DEFENDANT:  Yes, sir, I can assure you.

7          THE COURT:  So are the medications working

8    properly?

9          THE DEFENDANT:  They didn't give me any medication.

10          THE COURT:  Oh, okay.  So you still have pain, or

11    what's the deal?

12          THE DEFENDANT:  Yes, in my shoulder.

13          THE COURT:  Okay.  So do you need some more

14    treatment, some more pain or what?

15          THE DEFENDANT:  Yes.

16          THE COURT:  I mean, more consultation with a doctor

17    or what?

18          THE DEFENDANT:  Yes.  For my shoulder I do.

19          THE COURT:  I'll ask the marshals to look into that

20    for you.

21          THE DEFENDANT:  Thank you.

22          THE COURT:  So do you have any other kinds of

23    injuries, infirmities, illnesses, anything like that that

24    requires a physician, a psychiatrist or any other kind of

25    doctor?

1            THE DEFENDANT:  No, sir.

2            THE COURT:  So I take it that your mind is clear,

3  you're feeling well, and you're ready to proceed; is that

4  right?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  Because this is a criminal case you're

7  entitled to effective representation from a lawyer at each

8  stage of the proceedings against you.  Do you understand

9  that?

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  So with that in mind I'll ask you are

12  you satisfied with the way your lawyer has handled your case?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  Has she investigated the case to your

15  satisfaction?

16           THE DEFENDANT:  I don't think all the way.

17           THE COURT:  What's that?

18           THE DEFENDANT:  I think like some of it -- I don't

19  think the whole thing was investigated properly all the way.

20           THE COURT:  I'm talking about your lawyer.  Has

21  she investigated the case to your satisfaction?

22           THE DEFENDANT:  That's what I'm talking about.

23           THE COURT:  Well, okay, what's the problem?

24           THE DEFENDANT:  Well, she told me that there would

25  be -- I guess at sentencing it's going to be discussed at

```
1   sentencing, I guess.
2              THE COURT:  What's that?
3              THE DEFENDANT:  The rest of it.
4              THE COURT:  The what?
5              THE DEFENDANT:  The rest of what I have to say is
6   going to be at sentencing, I guess, it's supposed to be.
7              MS. BOOTH:  How about I explain it to the Judge?
8              THE DEFENDANT:  Okay.
9              MS. BOOTH:  Your Honor, what Mr. Hudson is speaking
10  about is at sentencing some important issues are going to
11  come to play as to whether or not certain guidelines apply in
12  this case.
13             THE COURT:  Okay.
14             MS. BOOTH:  Whether or not he's entitled to the
15  safety valve and whether or not substantial assistance has
16  been provided to the Government.  And I'm not finished in my
17  investigation on those issues.  So I believe that's what
18  Mr. Hudson is speaking about.
19             But as to the investigation that leads up to the
20  guilty plea I am complete in that investigation.
21             THE DEFENDANT:  Yes.  That's more accurate.
22             THE COURT:  Is there anything that's not accurate
23  about what she said?
24             THE DEFENDANT:  No.
25             THE COURT:  So is that your only gripe or
```

1    complaint?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And what else do you want her to do?  I

4    mean --

5              THE DEFENDANT:  Well --

6              THE COURT:  She said she's not finished with that

7    part.

8              THE DEFENDANT:  Well, that's about all right there.

9              THE COURT:  What's that?

10             THE DEFENDANT:  That's about all right there.

11             THE COURT:  I still can't hear you.  Speak up just

12   a little bit.

13             THE DEFENDANT:  That was about all.

14             THE COURT:  Okay.  All right.  And so, as I

15   understand it, that doesn't have anything to do with your

16   guilt or innocence on the charge; right?

17             THE DEFENDANT:  Yes.

18             THE COURT:  It has just more to do about your

19   background; is that right?

20             THE DEFENDANT:  No.  It was about the charges and

21   everything else and about the plea agreement that was made

22   with someone else.

23             THE COURT:  Do you want to fill this in a little

24   bit more?  I don't know what's going on.

25             MS. BOOTH:  Yes, Your Honor.  Again, Mr. Hudson,

1    we anticipate that there are going to be some important

2    issues that come up at sentencing.   And Mr. Hudson very much

3    wanted me to complete all my investigation as to those issues

4    prior to his guilty plea.

5            I have not been able to do that.   But that was

6    part and parcel because of my legal judgment that those

7    issues are separate from guilt or innocence as to what he's

8    pleading guilty to today.   Those issues are specifically

9    reserved for sentencing.

10           So even if I had found favorable evidence regarding

11   those potential sentencing issues, that favorable evidence

12   would not have changed whether or not a guilty plea would be

13   entered here today.   Again, that information solely is going

14   to go to sentencing factors.

15           But I do understand Mr. Hudson's point.   He was

16   hoping I would have had all that investigation done before he

17   even pleads guilty so that he'd have a better idea of knowing

18   what type of guideline would apply, whether substantial

19   assistance would be given and whether or not the safety valve

20   would apply.

21           THE COURT:  Well, I want to make sure his plea is

22   voluntarily and knowingly made.   And so maybe we should

23   continue the case for a while.   I don't know.

24           THE DEFENDANT:  My guilty plea is voluntary.

25           THE COURT:  Okay.  You just want to challenge the

1    matters that pertain to sentencing; is that right?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  And you want to go ahead and plead

4    guilty today then?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  You don't have any problems with your

7    lawyer then?

8              THE DEFENDANT:  No, sir.

9              THE COURT:  Okay.  Now, it's a little odd that you

10   don't have a plea agreement.  What's that about?  I mean,

11   99 percent of the cases have a plea agreement, and I'm

12   concerned about that.

13             THE DEFENDANT:  Well, in certain parts of it where

14   it said that I swerved towards the police officer I never

15   swerved towards the police officer to create no kind of a

16   substantial risk to him or danger to him, and that was in the

17   plea agreement.  And by that being in the plea agreement

18   alone that I read it and the --

19             THE COURT:  Well, let me just interrupt you.   If

20   that's not part of the elements of the offense, that doesn't

21   need to be in the plea agreement; right?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Well, I'm talking to your lawyer.

24             MS. BOOTH:  Yes, sir.   That's accurate.   That

25   does not need to be in the plea agreement.   Mr. Willis and I

1  tried to work this out.   And he worked very hard to produce

2  a plea agreement that was redacted that Mr. Hudson and I

3  found acceptable, but it was not.

4         And so we would like to not plead with the plea

5  agreement here today.   And Mr. Hudson and I have talked

6  about all the ramifications of that and that it's best always

7  to have a plea agreement, but we don't have one here today.

8         THE COURT:  Yeah.  You may be at a disadvantage

9  about that.   That's very unusual.  Do you understand?

10        THE DEFENDANT:  Yes, sir.  It was due to the fact

11 that I never swerved or went towards the officer.

12        THE COURT:  I understand, but my point is that

13 doesn't have to be part of the plea agreement.  You can

14 litigate that and challenge that at a later time.

15        THE DEFENDANT:  That's what I tried to tell

16 Ms. Booth, I guess, but out of me thinking it was in there,

17 and I that -- due to the fact that that was in there I would

18 think that I would get more time for something that was said

19 that I never did.

20        THE COURT:  I understand, but --

21        MS. BOOTH:  Your Honor, we did -- Mr. Willis drew

22 up a version of the plea agreement that alleged facts as to

23 the drug offense.  And in the plea agreement it said that we

24 would reserve for a later date whether or not Mr. Hudson

25 should receive any type of adjustment for recklessly or

1    knowingly and purposely attempting to cause injury to a

2    police officer during resisting arrest.

3            But even with that language contained in the plea

4    agreement in that the parties would reserve that issue for

5    sentencing Mr. Hudson -- it made him very uncomfortable that

6    that language was even in the plea agreement.

7            THE COURT:  Okay.  Well, then, Mr. Hudson, what

8    your lawyer said takes care of your concern completely.   And

9    I just want to make sure you know what you're doing, because

10   it's --

11           THE DEFENDANT:   No, sir, I'm not all the way.

12           THE COURT:  I think you're at a disadvantage to not

13   have a plea agreement.

14           THE DEFENDANT:  Yes, sir.  And that's what I was

15   thinking.

16           THE COURT:  So do you want to go forward anyway?

17           THE DEFENDANT:  Not if I'm going to be at a

18   disadvantage I don't want to.

19           THE COURT:  Do you want to talk with your client a

20   little bit more?

21           MS. BOOTH:  Yes, sir.   I don't know if the Court

22   has any other cases today.   We have that plea agreement that

23   we at one time looked at, or we just simply can continue this

24   matter until next week, Your Honor.

25           THE COURT:  Or even tomorrow.   I'll try to make

1    myself available.

2              MS. BOOTH:  All right.  I think if we can just

3    continue it until next week.

4              THE COURT:  I'll be out next week.

5              MS. BOOTH:  Or, sir, the rest of this day is

6    there --

7              THE COURT:  I have tomorrow, and I have later this

8    afternoon.

9              MS. BOOTH:  Sir, if I could -- I think that we

10   could possibly proceed today if I can just have a little time

11   to talk to Mr. Hudson, put him at the end of your docket,

12   because we actually have that.

13             THE COURT:  That's fine.  I'll take up another

14   case.  And can you accommodate them, Mr. Marshal?

15             MARSHAL:  Yeah.  It will take us a few minutes to

16   take him downstairs and bring up the next case, but it won't

17   take but a couple of minutes.

18             THE COURT:  Okay.  Why don't we try that.

19             Do you want to do that?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  Okay.  Fine.

22             (A discussion was held off the record.)

23             (Proceedings stood in temporary recess.)

24             THE COURT:  All right.  Mr. Hudson, after -- I see

25   that after you talked at some length with your lawyer you've

1   decided to go with a formal guilty plea agreement after all;

2   is that right?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  And have you had plenty of time to talk

5   with her about this?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  And I take it that this is the same

8   agreement that -- roughly the same agreement that you had

9   earlier; is that right?  Roughly?

10           THE DEFENDANT:  There was two different ones, but

11  that's the newer one right there.

12           THE COURT:  Okay.  Well, I'll get to that in a

13  minute.  So -- and the way we left off is I was asking you

14  about your lawyer's representation, and you're satisfied with

15  the way she's handled your case now at this time point;

16  right?

17           THE DEFENDANT:  Yes.

18           THE COURT:  So by pleading guilty you're giving up

19  your right to trial by jury.  Are you sure that's what you

20  want to do?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  If we were to have a trial, you'd be

23  presumed innocent.  The Government would have to prove you

24  guilty beyond a reasonable doubt, and you would not have to

25  prove your own innocence:  Do you understand?

1       THE DEFENDANT:  Yes, sir.

2       THE COURT:  But if we were to have a trial, the

3    Government would have to bring its witnesses in to court to

4    testify in your presence, and your lawyer would be allowed to

5    cross-examine those witnesses.

6         And then, of course, you could take the witness

7    stand yourself and testify and tell your side of the story,

8    and you could call witnesses in your own behalf.  You know

9    that too, don't you?

10       THE DEFENDANT:  Yes, sir.

11       THE COURT:  Then if we were to have a trial and you

12   decided not to testify, no one could force you or make you

13   testify against yourself.  And if you decided not to

14   testify, the jury would not be allowed to hold it against you

15   that you decided not to testify.  Do you understand?

16       THE DEFENDANT:  Yes, sir.

17       THE COURT:  So let me ask you again with all that

18   in mind are you sure you want to give up your right to have a

19   jury trial by pleading guilty?

20       THE DEFENDANT:  Yes, sir.

21       THE COURT:  Has anyone forced you, coerced you or

22   threatened you in any manner to get you to plead guilty?

23       THE DEFENDANT:  No, sir.

24       THE COURT:  Okay.  Now, we've got this new guilty

25   plea agreement.  Have you read the agreement?

1          THE DEFENDANT:  Yes, I have.

2          THE COURT:  Have you gone over it in detail with

3     your lawyer?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Has she explained the contents of the

6     agreement in detail to you?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  And do you understand the contents of

9     the agreement?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  Is there anything in here that you do

12    not understand?

13         THE DEFENDANT:  No, sir.

14         THE COURT:  Have any promises been made by anyone

15    to get you to plead guilty other than the promises set out in

16    this agreement?

17         THE DEFENDANT:  No, sir.

18         THE COURT:  So this is the complete, full and total

19    agreement; right?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Do you understand if I accept the

22    agreement, you will not be allowed to withdraw your plea of

23    guilty?  Okay?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  I'll ask your lawyers have any plea

1    offers been made by the Government that you have not in turn

2    conveyed to your client?

3              MS. BOOTH:  No, sir.

4              THE COURT:  I want to ask also about this plea

5    agreement.   You said it's the second agreement.  It's one

6    that's had revisions to it.   Do you want to explain that?

7              MS. BOOTH:  Yes.   Sir, the first plea agreement

8    had the parties agreeing that plus six would apply under the

9    guidelines for the official victim guideline.   That was the

10   first agreement.  And, of course, Mr. Hudson disputes that he

11   resisted arrest in any way that caused any type of possible

12   assault to the arresting officer.

13             So now in our new revised agreement we reserve the

14   right to litigate that issue at sentencing.

15             THE COURT:  Is that the only thing then in it?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Is that right?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Okay.   I see that you and the lawyers

20   have signed the agreement on the bottom of page 10 and at the

21   top of 11; is that right too?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  Do you have any questions about it?

24             THE DEFENDANT:  No, sir.

25             THE COURT:  Okay.   And that's the only change.

```
 1    You had read and reviewed in detail the earlier plea
 2    agreement without the change; right?
 3              THE DEFENDANT:  Yes, sir.
 4              THE COURT:  So -- okay.  Do you have any questions
 5    about it?
 6              THE DEFENDANT:  No, sir.
 7              (PURSUANT TO LOCAL RULE 13.05, A CONFERENCE WAS
 8    HELD ON THE RECORD AND PLACED UNDER SEAL, AFTER WHICH THE
 9    FOLLOWING PROCEEDINGS CONTINUED IN OPEN COURT:)
10              THE COURT:  Okay.  I see on page 6, Paragraph 7
11    that is entitled Waiver of Appeal and Post-Conviction Rights
12    subparagraph a(1) addresses the non-sentencing issues.   What
13    this says is that by pleading guilty you are waiving or
14    giving up your right to bring an appeal in this case as to
15    the non-sentencing issues.   That is to everything that has
16    transpired in the case up to and through this guilty plea
17    hearing this afternoon, including all the rulings on all the
18    pretrial motions.  Do you agree with that part of it?  Do you
19    understand that?
20              THE DEFENDANT:  Yes, sir.
21              THE COURT:  Do you have any questions about that?
22              THE DEFENDANT:  No, sir.
23              THE COURT:  Okay.  Then the second subparagraph is
24    about the sentence itself.  What this says is if I impose a
25    sentence against you that's within or below the Sentencing
```

1    Guidelines range, if that happens, then you'll waive your or

2    give up your right to appeal even the sentence itself.  Do

3    you understand that too?

4             THE DEFENDANT:  Yes, sir.

5             THE COURT:  So the only thing that you could appeal

6    at that time would be the determination about your criminal

7    history.  That's your criminal record and nothing else.  Do

8    you understand that?

9             THE DEFENDANT:  Yes, sir.

10            THE COURT:  Your lawyer has explained this to you;

11   right?

12            THE DEFENDANT:  Yes.

13            THE COURT:  Again, do you have any questions?

14            THE DEFENDANT:  No, sir.

15            THE COURT:  And has she also explained to you the

16   Sentencing Guidelines?

17            MS. BOOTH:  Sir, we actually do have an issue.

18   Mr. Hudson understands that he is able to -- it's our

19   understanding he'll be able to appeal any sentencing issue.

20   For example, if for some reason it's deemed that he's not

21   entitled to a substantial assistance 5K downward departure or

22   he's not entitled to the safety valve relief, he would like

23   the opportunity to be able to litigate that.

24            MR. WILLIS:  May I have a moment with counsel?

25            THE COURT:  Yes.

```
1                    (A discussion was held off the record.)

2              MS. BOOTH:  All right.  Your Honor, we're ready to

3    proceed as is.

4              THE COURT:  Do you have any questions about that

5    then?

6              THE DEFENDANT:  No, sir.

7              THE COURT:  So your lawyer has explained to you the

8    Sentencing Guidelines?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Okay.  Let me go back to the

11   sentencing and the waiver of appeal on that.  Did I get it

12   right or --

13             MS. BOOTH:  No, sir.  Yes.  As Mr. Hudson

14   understands it, if the Court decides that the base level is

15   what Mr. Hudson and I believe it would be, that's just simply

16   the gram weight without any adjustments for any type of

17   assault on a police officer.  Should the Court sentence him

18   in that guideline range he is not free to appeal that

19   sentence.

20             THE COURT:  Okay.

21             MS. BOOTH:  That's essentially what we believe that

22   paragraph indicates.

23             THE COURT:  Okay.  Well, that's what it says, I

24   think.

25             MS. BOOTH:  Is that a fair --
```

1      MR. WILLIS:  I believe that's --

2      MS. BOOTH:  -- assessment?

3      MR. WILLIS:  Yes.  I believe that's an accurate

4  rendition.

5      MS. BOOTH:  So that does leave us abandoning any

6  type of appeal regarding a safety valve issue.   If

7  Mr. Hudson and I want to appeal some type of safety valve

8  issue, the Government at this point is not being unfair, but

9  they will not enter into this agreement, and then we go back

10  to an open plea.

11      THE COURT:  Okay.  I see that it only affects the

12  base offense level on the Criminal History category.  That's

13  the point.

14      MS. BOOTH:  Yes, sir.

15      THE COURT:  Yeah.   Now, what did you say about an

16  open plea?

17      MS. BOOTH:  Sir, I don't believe that this

18  paragraph would allow Mr. Hudson and I to appeal any safety

19  valve issue.   And I just spoke with Mr. --

20      THE COURT:  I think it would, because that -- that

21  would affect the base offense level and the Criminal History

22  Category, wouldn't it?

23      MR. WILLIS:  Yes, sir.

24      THE COURT:  So it's all rolled into the safety

25  valve.

1    MR. WILLIS:  Yeah.  I think the way this is written
2    is if he ends up losing an argument in that respect, he can
3    appeal.
4         MS. BOOTH:  Oh, all right.  Okay.
5         MR. WILLIS:  I believe that's how that interprets.
6         MS. BOOTH:  All right.  Then that's better.  So,
7    yes, so then we're fine with this paragraph.
8         THE COURT:  In that regard I've got the pretrial
9    release report, and it does show he's got a felony conviction
10   in St. Charles County in 2017 for possession of a controlled
11   substance.
12        MS. BOOTH:  I believe point wise, Your Honor, he
13   would be eligible for the safety valve, but then the safety
14   valve also has issues regarding whether or not violence was
15   used during the offense.  So then we go back to the issue
16   did Mr. Hudson use violence when resisting arrest on this
17   offense.  And --
18        THE COURT:  I understand that part, but why would
19   he be eligible for the safety valve if he's got a felony
20   conviction from two years ago?
21        MS. BOOTH:  Sir, because now under the First Step
22   Act the points have increased.
23        THE COURT:  Oh, that explains it.
24        MS. BOOTH:  Four points is the cutoff for the
25   safety valve now.

1    THE COURT:  Okay.  We haven't had one of those yet.

2  So I got it.  So he might qualify then for it.

3    MS. BOOTH:  Yes, sir.

4    THE COURT:  We'll have to see.

5    So, in any event, your lawyer has explained to you

6  the Sentencing Guidelines; right?

7    THE DEFENDANT:  Yes, sir.

8    THE COURT:  And so you'll understand after your

9  plea I'll get with the probation office, and we'll calculate

10  the Sentencing Guidelines by using two factors.  The first is

11  your criminal history.  That's your criminal record.   And

12  then the second is what we call the Total Offense Level for

13  this offense.   Those are the two factors that go into the

14  calculation:  Okay?

15    THE DEFENDANT:  Yes, sir.

16    THE COURT:  And then if you disagree with the

17  calculation, you'll be allowed to challenge that

18  determination.  Do you understand?

19    THE DEFENDANT:  Yes, sir.

20    THE COURT:  And your lawyer has explained it;

21  right?

22    THE DEFENDANT:  Yes, sir.

23    THE COURT:  Now, I do see on page 5 that the

24  lawyers estimate the Total Offense Level is 29.  And that

25  was what it would be if the four-level enhancement applies?

1    No.  No.

2            MR. WILLIS:  I think it's -- it should indicate in

3    the alternative there, Judge.

4            THE COURT:  And 23 if it does not apply.  What is

5    3A1.2(c)(1)?

6            MS. BOOTH:  That's the official victim adjustment

7    plus six points for using --

8            THE COURT:  Oh, that's the plus six adjustment?

9            MR. WILLIS:  Yes.

10           THE COURT:  Okay.  That's right.  That's the plus

11   six adjustment?

12           MR. WILLIS:  Yes, sir.  We think it's either 23 or

13   29 depending on how it goes on there.

14           THE COURT:  Okay.  I got it.  I got it.

15           So, anyway, the lawyers estimate it's 29 or 23

16   depending on that plus six-level adjustment, which is the

17   reason that you didn't want an agreement in the first place.

18   You want to litigate that; right?

19           THE DEFENDANT:  Yes, sir.

20           THE COURT:  So, anyway, it may be 29.  It may be

21   23.  Something lower.  Something above.  Something in

22   between.  But, again, if you disagree, you can challenge that

23   determination:  Okay?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  And that's what I think is going to

1    happen apparently.

2              MR. WILLIS:  Yes, sir.  From my understanding.

3              THE COURT:  Okay.  So I need to tell you too that

4    the Sentencing Guidelines, whatever they turn out to be, are

5    simply guidelines.  And by that I mean I can impose a

6    sentence against you that's above the guidelines or a

7    sentence that's below the guidelines.  Do you understand that

8    too?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  So what I am bound by, though, is the

11   statutory penalty.  That's Paragraph 5 at the bottom of

12   page 3 and at the top of page 4.  For this offense the

13   penalty is up to 40 years in prison, a fine of up $5 million

14   or a combination of imprisonment and fine.

15             After your release, there would be a period of

16   supervised release of at least 4 years.  And there's also a

17   mandatory minimum term of imprisonment of at least five

18   years.  Do you understand all that?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  So I'm going to consider the full range

21   of punishment from 5 years minimum to 40 years maximum.  And

22   then the sentence to be imposed will be in my discretion

23   within that range of punishment.  Do you understand that too?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  So with that in mind has anyone told

1    you or promised you what sentence you'll receive in the case?

2          THE DEFENDANT:  No, sir.

3          THE COURT:  I'll ask the prosecutor to summarize

4    the evidence that the Government would prove if the case were

5    to go to trial.

6          MR. WILLIS:  Your Honor, if the matter proceeded to

7    trial, the United States is in a position to prove the

8    following things beyond a reasonable doubt.  On January 15th

9    of 2019 at approximately 3:00 a.m. in Pemiscot County a

10   deputy observed two vehicles parked in the lot of the Hayti

11   Heights City Hall.  As the deputy approached to investigate,

12   one of those vehicles drove off.

13         The deputy made contact with the driver of the

14   remaining vehicle who was identified as the Defendant, Robbie

15   Donyel Hudson.   As the officer was speaking with Mr. Hudson,

16   he noticed an odor of marijuana coming from the car.

17   Mr. Hudson was requested to step out of the car, and the

18   officer attempted to perform a frisk for weapons.  He felt a

19   hard object in the pocket of Hudson's hoodie, which the

20   officer believed to be a weapon.

21         Mr. Hudson began to distance himself from the

22   officer, and Hudson's passenger fled on foot.  Mr. Hudson

23   then reentered his vehicle and drove off.  He fled a short

24   distance and entered a house with the officer in pursuit.  An

25   individual in the house hindered the officer's entry allowing

1    Mr. Hudson time to hide.   Mr. Hudson voluntarily surrendered

2    to officers shortly thereafter and was taken into custody and

3    was advised of his rights.   The deputies obtained consent

4    from the owner to search the residence.   Officers located in

5    a closet what was tested at the Missouri State Highway Patrol

6    crime lab and determined to be 240.93 grams of a substance

7    containing methamphetamine.

8           Mr. Hudson was advised of his Miranda Rights, and

9    he agreed to waive those rights and to speak with officers.

10   Mr. Hudson admitted that he had ran because he had

11   methamphetamine in the pocket of his hoodie where the officer

12   had believed he felt a weapon.   Mr. Hudson admitted that

13   once he had reached the residence that he had thrown the

14   methamphetamine in the closet.

15          And that ends the stipulated facts.

16          THE COURT:  All right.   Have you heard the

17   statements from the prosecutor?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Is everything he said true and correct?

20          THE DEFENDANT:  No, not all of it is true.

21          THE COURT:  What's that?

22          THE DEFENDANT:  No, not all of it is true.

23          The only reason why I pulled off in the car is

24   because the officer -- the passenger -- we had one vehicle --

25   the passenger was in a car, and when the officer pulled up in

1    the car, he drew his gun on the other -- the other -- the guy

2    that was in the car that pulled up, because he was drunk and

3    belligerent in the car, and that's the only reason I pulled

4    off.  And I told the officer that because he pointed the gun

5    right at me trying to -- angling it at the other guy.

6          THE COURT:  Yeah, I understand, but the only thing

7    here it says is that you drove off, not why.

8          THE DEFENDANT:  Yeah.  Well, I just wanted to let

9    you know the reason why that I did that.

10         THE COURT:  Okay.  Yeah, okay.  But that's -- so

11    you admit this.  It's that you just want to add some more to

12    it; right?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Okay.  Well, that will be for

15    sentencing.  Okay?

16         THE DEFENDANT:  Okay.

17         THE COURT:  But you admit what he said, though?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Okay.  No question about that part, is

20    there?

21         THE DEFENDANT:  No, sir.

22         THE COURT:  I'm going to go through the elements.

23    So you admit that you did all those acts that he mentioned?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Okay.  So I am going to go through the

1    elements with you specifically.   That's Paragraph 3 on

2    page 2.   Do you admit that you possessed methamphetamine,

3    that you knew it was methamphetamine, and that you intended

4    to distribute some or all to another person or persons.   Do

5    you admit that?

6             THE DEFENDANT:  Yes, sir.

7             THE COURT:  Do you also admit that it was more than

8    50 grams of methamphetamine?

9             THE DEFENDANT:  Yes.

10            THE COURT:  Are you pleading guilty, then, because

11   you are guilty?

12            THE DEFENDANT:  Yes, sir.

13            THE COURT:  Based on your sworn testimony, the

14   Court finds that you're competent to enter the plea of

15   guilty, that you're doing so freely, knowingly and

16   voluntarily.

17            Further, that you have admitted the essential

18   elements of the crime charged.   Therefore, I find you guilty

19   as charged.

20            I accept the plea agreement.   I'll order a

21   presentence investigation.   And I need to go off the record.

22            (A discussion was held off the record.)

23            THE COURT:  Your sentencing date will be Tuesday,

24   January 21st at 1:20 p.m.  And you'll need to speak with the

25   probation office to begin the preparation of the presentence

1   report.

2          Do you have any questions then?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  Okay.   And then, like we discussed, at

5   sentencing we can litigate all the questions about the

6   circumstances after the stop.

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Okay.   Anything further from the

9   Government?

10          MR. WILLIS:  No, sir, Your Honor.

11          THE COURT:  For the Defendant?

12          MS. BOOTH:  No, sir.  Thank you.

13          THE COURT:  Okay.  I'll see you back here Tuesday,

14   January 21st at 1:20 p.m.  Okay.   We'll be in recess.

15          (PROCEEDINGS CONCLUDED AT 4:00  P.M.)

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T E

3

4         I, Alison M. Garagnani, Registered Merit Reporter

5   and Realtime Reporter, hereby certify that I am a duly

6   appointed Official Court Reporter of the United States

7   District Court for the Eastern District of Missouri.

8              I further certify that the foregoing is a true and

9   accurate transcript of the proceedings held in the

10  above-entitled case and that said transcript is a true and

11  correct transcription of my stenographic notes.

12             I further certify that this transcript contains

13  pages 1 through 31 inclusive and that this reporter takes no

14  responsibility for missing or damaged pages of this

15  transcript when same transcript is copied by any party other

16  than this reporter.

17             Dated Cape Girardeau, Missouri, this 13th day of

18  July, 2020.

19

20

21
    _____
22  /s/Alison M. Garagnani
    Alison M. Garagnani, CCR, CSR, RMR.
23  Official Court Reporter

24

25