```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MISSOURI
 2                        SOUTHEASTERN DIVISION

 3   UNITED STATES OF AMERICA,

 4        Plaintiff,

 5        vs.              Cause No. 1:19CR00087 SNLJ

 6   ROBBIE DONYEL HUDSON,

 7        Defendant.
     ===========================================================
 8                       SENTENCING HEARING

 9        BEFORE THE HONORABLE STEPHEN N. LIMBAUGH, JR.
                  UNITED STATES DISTRICT JUDGE
10
                         FEBRUARY 27, 2020
11   ===========================================================

12                          APPEARANCES

13   For Plaintiff:

14   Mr. Timothy J. Willis
     Assistant United States Attorney
15   Rush Hudson Limbaugh, Sr. Courthouse
     555 Independence, 3rd Floor
16   Cape Girardeau MO 63703

17   For Defendant:

18   Ms. Jennifer L. Booth
     Assistant Federal Public Defender
19   325 Broadway, 2nd Floor
     P.O. Box 2043
20   Cape Girardeau MO 63702-2043

21
                          Reported by:
22
               Alison M. Garagnani, CCR #475, CSR, RMR, CRR
23                    Official Court Reporter
                  United States District Court
24                555 Independence, Room 3100
                    Cape Girardeau, MO 63703
25                       (573) 331-8832
```

1          (THE PROCEEDINGS BEGAN AT 10:39 A.M.)

2  (THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT AND WITH

3  THE DEFENDANT PRESENT:)

4          THE COURT:  The next case is the United States of

5  America versus Robbie Donyel Hudson.   The Case Number is

6  19-CR-087.

7          The Government is present by Assistant United

8  States Attorney Tim Willis.

9          Defendant is present in person and by counsel

10 Jennifer Booth.

11         This matter is set today for sentencing, you having

12 pled guilty before me several weeks ago.

13         I received a presentence report from the probation

14 office.  Did you also get a copy of the report?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Have you read it and have you gone over

17 it in detail with your lawyer?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Any additions, corrections or

20 objections by the Defendant other than those that you made

21 formally?

22         MS. BOOTH:  No, sir.

23         THE COURT:  For the Government?

24         MR. WILLIS:  No, Your Honor.

25         THE COURT:  The Court then will adopt as its

1  findings of fact the factual statements set out in the

2  presentence report with the exception of the formal

3  objections that were made by Defendant, which I will take up

4  at this time.

5          And it's my understanding, then, that the

6  Government is going to concede the objection to the six-level

7  enhancement as opposed to the Defendant's position that it

8  should be a two-level enhancement for creating a substantial

9  risk of -- I'm sorry, the difference between that being the

10  Defendant acted recklessly instead of intentionally in his

11  flight from the arresting officers.  Did I get that right

12  counsel then?

13          MR. WILLIS:  Judge, that is correct.   And if I can

14  make a slight record, please.  The victim, who's Jesse

15  Johnson, is here.  Both counsel and I had an opportunity to

16  talk to him about this this morning.   His position is that

17  he knows that Mr. Hudson swerved toward him and came close to

18  striking him, but he's unable to indicate whether that was an

19  intentional act on Mr. Hudson's part or not.

20          It was somewhat dark.   Obviously, this is all

21  going on in a quick hurry.   He was able to see Mr. Hudson

22  looking forward but was not able to see his eyes or if he was

23  looking at him.  During their later discussions, this issue

24  simply didn't come up, so there's simply not enough evidence

25  at this point to show that it was an intentional act on Mr.

1    Hudson's part.

2         THE COURT:  In that case I will sustain the

3    Defendant's objection to the six-level enhancement, and it

4    will be then simply a two-level enhancement.

5         And let's address the other objection too.  That

6    was the objection about the conviction in 2017, a misdemeanor

7    violation of an order of protection in Arapahoe County,

8    Colorado for which the Defendant received some 400 plus days

9    in jail, well more than a year's worth of days.

10        So did you have evidence that you wanted to submit

11   on that point?

12        MR. WILLIS:  Your Honor, I believe that the

13   probation department has those records.

14        THE COURT:  Do you want to admit those into

15   evidence then?

16        MR. WILLIS:  Yes, Your Honor.  If it please the

17   Court.

18        THE COURT:  All right.  These are summarized by

19   the probation office.  And, counsel, you reviewed these?

20        MS. BOOTH:  Sir, I have reviewed those records.

21   They do appear to indicate that Mr. Hudson was convicted and

22   the dates of the offense and for the sentence and judgment as

23   indicated in Paragraph 51.  However, those are not certified

24   court records.  I'll let the U.S. probation officer advise

25   the Court where they came from.

1        It's Mr. Hudson's position that he just simply does

2   not remember being convicted for that offense in 2017 and

3   remaining in jail for 470 days.   It could be his memory is

4   faulty.  It could be the -- we don't have certified court

5   records, so those records you're holding, sir, may be

6   incorrect.  I don't know.

7        But certainly we'll accept the Court's decision

8   once the Court has had an opportunity to review the records.

9        THE COURT:  Well, they appear to be records that

10   are part of the public record in the State of California.

11   It's a state court website?

12        Do you have any reason to dispute the accuracy or

13   the validity of these records?

14        MS. BOOTH:  Sir, other than the offense for the

15   records you're holding happened in 2012, but it indicates the

16   conviction didn't come down until 2017.   That seems a little

17   odd, that delay.   But we have nothing to submit to the Court

18   to challenge the accuracy of the exhibit you're holding now.

19        THE COURT:  Okay.  You've had these documents;

20   right?

21        MS. BOOTH:  I have looked at them before today and

22   also today, Your Honor.

23        THE COURT:  Okay.  I just wanted to make sure that

24   they were -- you were afforded the opportunity to examine all

25   these documents.

1        MS. BOOTH:  Yes, sir.

2        THE COURT:  I'm going to admit these into evidence

3   and overrule your objection to that particular conviction in

4   Arapahoe County, Colorado.

5        So with that we'll need to recalculate the

6   Sentencing Guidelines, because the Total Offense Level was --

7   well, let me go back then.  And having overruled your

8   objections to the second -- your objection to the second

9   point about the Colorado conviction of 2017, I'll adopt as my

10  findings of fact to include that conviction.

11       So at this point let's recalculate the Sentencing

12  Guidelines.   The Total Offense Level had been 29, and so now

13  that will be reduced by 4 -- 6 minus 2.   So that would be a

14  Total Offense Level of 25 and still the Criminal History

15  Category would be V.

16       So, counsel, do you want to advise the Court then?

17       MR. WILLIS:  Judge, I believe that the correct

18  guidelines range with the Total Offense Level of 25 and

19  Criminal History Category of V would be 100 to 125 months.

20       THE COURT:  That's what I thought too.

21       You agree with that, don't you?

22       MS. BOOTH:  Yes, sir.

23       THE COURT:  The probation office also agrees?

24       PROBATION OFFICER:  Yes, Your Honor.

25       THE COURT:   Okay.   The supervised release period

1    then will be 4 to 5 years.   I should say the statute

2    provides for a minimum of 5 years to 40 years in prison.

3    The guidelines, then, are 100 months to 125 months and a

4    supervised release period of 4 to 5 years.   And the

5    Defendant is ineligible for probation.

6              Any objections then?

7              MR. WILLIS:  No, Your Honor.

8              MS. BOOTH:  No, sir.

9              THE COURT:   The Court then will adopt as its

10   additional findings the Sentencing Guidelines calculations as

11   stated.

12             What then is the Government's recommendation?

13             MR. WILLIS:  Your Honor, this is a serious case for

14   a couple of reasons.   First of all, it did involve 240 grams

15   of methamphetamine, which is a large amount.

16             Also, it involved Mr. Hudson fleeing and

17   endangering the police officer that was trying to conduct the

18   stop in that instance.

19             Mr. Hudson unfortunately has a very lengthy

20   criminal history dating back to age 11.   He's had about 20

21   different convictions.   Most of those are driving

22   convictions.   Some of them are called driving under

23   restraint, whatever that is in Colorado, and driving while

24   revoked and without a valid driver's license.

25             He has apparently three felony convictions for

1    possession of a controlled substance, including convictions

2    in 1999, 2006 and 2017.   He has two misdemeanor marijuana

3    convictions, one in 2000 and one in 1999.

4           According to the presentence report he started

5    smoking marijuana at age 9.   That's really an awful record

6    in this instance.  Mr. Hudson has been sent to prison the two

7    times.  The two drug cases he went to prison for both times

8    he was paroled and later revoked.

9           He's been to treatment a couple of times, once in

10   the Department of Corrections in Colorado and one while on

11   release.

12          So it looks like the authorities have done

13   everything to provide Mr. Hudson the tools that he needs to

14   help himself.   He for whatever reason has been unable nor

15   willing to avail himself of that.

16          Under all the circumstances we would suggest that a

17   sentence, which is at the top range of the guidelines, of 120

18   months is an appropriate sentence.

19          There's no restitution owing.  I spoke with the

20   victim, who's here today.   He suffered no injury or any loss

21   of property.

22          I think that Mr. Hudson would also benefit from

23   RDAP while he's incarcerated, and we would ask that he be

24   considered for placement in the drug treatment program.

25          THE COURT:  Ms. Booth, I've read closely your

1    sentencing memorandum, and I'll consider all of that

2    information, all the mitigating factors that you've set out

3    in there.  The Section 3553(a) factors are all very well

4    documented, and I want to commend you for a very thorough

5    memorandum.

6            So with that do you want to speak further for your

7    client?

8            MS. BOOTH:  No, sir.  We understand -- Mr. Hudson

9    and I -- that the Court has carefully read the sentencing

10   memorandum I prepared for today.

11           Just a moment, Your Honor, please.

12           THE COURT:  Yeah.

13           (A discussion was held off the record.)

14           MS. BOOTH:  Your Honor, Mr. Hudson actually has a

15   letter he's prepared that he was not able to give to me prior

16   today, and he's happy to have Mr. Willis read it and also the

17   Court, but he'd like to just submit it to you versus reading

18   it out loud.

19           THE COURT:  That's fine.  If you want to just bring

20   it up.

21           We'll go off the record.

22           Do you have a copy for Mr. Willis?

23           MS. BOOTH:  I do not.  I can make a copy quickly.

24           MR. WILLIS:  It's not very long.  I'm willing to

25   read it briefly, and then we can proceed if you want.

1          THE COURT:  It won't take long.

2          MR. WILLIS:  Okay.

3          (A discussion was held off the record.)

4          THE COURT:  Mr. Willis, have you finished reading

5     the letter?

6          MR. WILLIS:  Yes, Your Honor.

7          THE COURT:  This does cause me some concern.  This

8     is all new information.  I don't know if you've seen it?

9          MS. BOOTH:  Sir, yes.

10         (PURSUANT TO LOCAL RULE 13.05, A CONFERENCE WAS

11    HELD ON THE RECORD AND PLACED UNDER SEAL, AFTER WHICH THE

12    FOLLOWING PROCEEDINGS CONTINUED IN OPEN COURT:)

13         THE COURT:  So do you want to say anything else

14    then?

15         THE DEFENDANT:  No.  That will be it, sir.

16         THE COURT:  So is there any legal cause or reason

17    why sentence should not now be imposed?

18         MS. BOOTH:  No, sir.

19         MR. WILLIS:  No, Your Honor.

20         THE COURT:  Looking at your record, Mr. Hudson, and

21    all that's catching up with you.  You know, you've been to

22    prison.  You've had substance abuse treatment and nothing

23    seems to work, and I'm just really concerned about it.

24         THE DEFENDANT:  For the last six years I've been

25    just -- I've been going on the right path.  For the last six

1  years I've been in no trouble but one time where I had

2  marijuana, and that's been six years.   So I've been clean

3  and good and was doing well.

4       THE COURT:  I'm just looking back over it.  Over

5  the last -- since 2006 you've got four years in prison in

6  2006.  Actually, that was you didn't get sentenced until

7  2008.  Four years in prison there.  And then in 2007 you got

8  a misdemeanor conviction for assault, harassment.

9       And then 2012 you got another misdemeanor

10  conviction, and that was for the 470-day jail thing, but that

11  went back to 2012, of course.  And then in 2016 you got

12  another felony conviction, though, for marijuana, although

13  the total punishment was a fine.  I guess that's right.

14       THE DEFENDANT:  Yes, sir.

15       THE COURT:  Okay.  Pursuant to the Sentencing

16  Reform Act of 1984 and the provisions of Title 18, United

17  States Code Section 3553(a) and all the factors thereunder

18  and also in view of the sentencing objectives of just

19  punishment, general deterrence and incapacitation it's the

20  judgment and sentence of the Court that you, Robbie Donyel

21  Hudson, is hereby committed to the custody of the Bureau of

22  Prisons to be imprisoned for a term of 100 months.

23       While you're in the custody of the Bureau of

24  Prisons, I recommend that you be evaluated for participation

25  in the Residential Drug Abuse Program and for mental health

1    treatment.

2            I also recommend that you be evaluated for

3    participation in occupational/educational programs in welding

4    and HVAC.

5            When you're released, you'll be placed on

6    supervised release for a term of four years.

7            Within 72 hours of your release you have to report

8    in person to the probation office in the district to which

9    you're released.

10           You'll have to comply with the mandatory conditions

11   that have been adopted by this Court, which include you must

12   not commit another federal, state or local crime.

13           You must not unlawfully possess a controlled

14   substance.   You must refrain from any unlawful use of a

15   controlled substance and submit to drug testing at the

16   direction of the probation office.

17           And you must cooperate in the collection of DNA as

18   directed by the probation office.

19           You're also subject to the following additional

20   special conditions, and if it is determined that there are

21   any costs associated with the services provided, you have to

22   pay those costs based on a co-payment fee established by the

23   probation office.

24           I thought that you had received a high school GED.

25           THE DEFENDANT:  I did.

1          THE COURT:  Okay.   Although I don't think it's

2   been confirmed.   Do you have a certificate on that?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Okay.   So I'm going to order that as a

5   special condition that you participate in a mental health

6   treatment program.  I know you've got mental health issues,

7   and I really want to get those under control with the right

8   medication and counseling, and so forth.

9          Again, you must submit to substance abuse testing,

10  but you also must participate in a substance abuse treatment

11  program as directed by the probation office.

12         You also must submit your person, property, house,

13  residence, vehicle, papers, computers, other electronic

14  communications or data storage devices or media or office to

15  a search conducted by the probation office if there's

16  reasonable suspicion that you've violated a condition of your

17  supervised release and that the areas to be searched contain

18  evidence of the violation.

19         The Court finds you do not have the ability to pay

20  a fine, but it is further ordered that you shall pay to the

21  United States a special assessment of $100, and that's due

22  immediately.

23         I have to advise you you have a right to appeal

24  from this sentence, but you have to bring your appeal within

25  14 days.   Failure to appeal within the 14-day period will be

1    a waiver of your right to appeal.

2            You're also entitled to assistance of counsel in

3    taking an appeal.   If you can't afford a lawyer, one will be

4    appointed to represent you.   And if you so request, the

5    Clerk of the Court will file a notice of appeal on your

6    behalf.

7            Do you understand you have that right to appeal?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  Is there anything further, then, for

10   the Government?

11           MR. WILLIS:  No, Your Honor.  Thank you.

12           THE COURT:  For the Defendant?

13           MS. BOOTH:  Your Honor, just a brief moment.

14           Your Honor, Mr. Hudson would like to ask the Court

15   to recommend that he be placed as close to Colorado as

16   possible.

17           THE COURT:  I'll make that recommendation.

18           Before you leave, Mr. Hudson, I hope you take

19   advantage of the programs in the prison system to better

20   yourself.  To the extent you've got a drug problem the RDAP

21   program in the prison system is the best in the world, but

22   you really need to get some more education.  You need to get

23   some more vocational training.  You need to get your mental

24   health problems under control.

25           And while you're doing this time and later when you

1    get out, there will be all sorts of programs to help you help

2    yourself on all those points.

3            So good luck to you then.

4            Court will be in recess until the afternoon docket

5    then.

6            (PROCEEDINGS CONCLUDED AT 12:10 P.M.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, Alison M. Garagnani, Registered Merit Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 16 inclusive and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

Dated Cape Girardeau, Missouri, this 13th day of July, 2020.


-------------------------------------------
/s/Alison M. Garagnani
Alison M. Garagnani, CCR, CSR, RMR.
Official Court Reporter